IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | *   **CRIM. ACTION NO. 05-0132-CG** |
| **v.** | * |
| | *   **CIVIL ACTION NO. 07-0071-CG** |
| **WILLIAM LESLIE WINGO, III** | * |
| | * |

## ORDER

Defendant, through retained counsel, has filed a Motion to Vacate, Set Aside, or Correct Sentence (Doc. 91)[1] pursuant to 28 U.S.C. §2255, raising six grounds for relief: 1) that the defendant's waiver of the right to appeal and to collaterally attack the sentence, contained in the written plea agreement, was not knowingly or voluntarily made due to ineffective assistance of counsel; 2) that counsel was ineffective in relation to the guilty plea in that a) counsel advised defendant to accept the plea before seeing discovery, b) counsel advised defendant that he would receive approximately seven years imprisonment, c) at sentencing, counsel withdrew his objections to the drug amounts and Guidelines calculations contained in the presentence investigation report, d) counsel inaccurately assured defendant concerning various issues, and e) counsel failed to meet with defendant concerning the plea until shortly before the hearing; 3) that the court erred in determining the sentence, citing U.S. v. Booker[2]; 4) that the court erred in treating the Sentencing Guidelines as mandatory, citing U.S. v. Booker; 5) that the court erred by basing the sentence on findings made under a standard other than beyond a reasonable doubt; and 6) that the court erred by sentencing defendant to a term of imprisonment greater than

---

[1] For simplicity, the court will refer to the criminal case file in identifying documents, and will refer to Mr. Wingo as 'defendant'.

[2] U.S. v. Booker, 543 U.S. 220 (2005).

necessary to achieve the goals of imprisonment, citing U.S. v. Booker.

## Factual Background

Defendant was charged in a five-count indictment with conspiracy to possess with intent to distribute methamphetamine, conspiracy to possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, possession with intent to distribute methamphetamine, possession of pseudoephedrine with intent to manufacture methamphetamine, and possession with intent to distribute methamphetamine.  On June 23, 2005, defendant entered into a written plea agreement and factual resume with the United States, agreeing to plead guilty to count two of the indictment, conspiracy to possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine.  The plea agreement contained a limited waiver of defendant's right to appeal and to collaterally attack his sentence; the waiver contained exceptions for a sentence imposed in excess of the sentencing guideline range, a sentence in excess of the statutory maximum, or a claim of ineffective assistance of counsel.  A plea hearing was held on June 23, 2005; the court accepted defendant's plea to Count Two of the indictment following a Rule 11 plea colloquy.  The court found that defendant's plea was knowing and voluntary.

Following the plea, the probation officer assigned to defendant's case presented the presentence investigation report, containing the details of the preliminary calculation of the defendant's advisory Guideline range pursuant to the federal Sentencing Guidelines. Defendant's attorney filed written objections to the PSI prior to the hearing.  The objections asked that the court (1) impose a reasonable sentence sufficient, but not greater than necessary, to achieve the purposes of sentencing; (2) to recommend that the Bureau of Prisons allow

defendant to participate in drug treatment; (3) to grant a three level reduction for acceptance of responsibility; (4) consider only the type of methamphetamine proven beyond a reasonable doubt; (5) consider the advisory guidelines along with 18 U.S.S.G. §3553(a).  At the sentencing hearing, defendant's counsel withdrew the objections due to the Government's recommendation of a downward departure.  The court found the appropriate guidelines range to be 169 to 210 months, and granted a downward departure on the Government's motion.  The court sentenced defendant to 160 months imprisonment, a four year term of supervised release, and a $100.00 special assessment.

Defendant filed a direct appeal.  The government filed a Motion to Dismiss the appeal on the basis of the appeal waiver provision of the plea agreement.  The Court of Appeals granted the motion to dismiss on August 1, 2006.  Defendant filed the instant petition on January 29, 2007.  There is thus no issue concerning the timeliness of defendant's motion.

Habeas Standard

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal."  U.S. v. Frady, 456 U.S. 152, 165 (1982).  A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted."  Id. at 164.  Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited.  Addonizio v. U.S., 442 U.S. 178, 185 (1979).  Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings.  The appellate process does not permit reruns."  Moore v. U.S., 598 F.2d 439, 441 (5th Cir. 1979).

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." Burke v. U.S., 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. U.S., 893 F.2d 1287, 1289 (11th Cir. 1990); see also Lynn v. U.S., 365 F.3d 1225, 1234 (11th Cir. 2004).

One way a petitioner may overcome a procedural default is by demonstrating that the default was due to constitutionally ineffective performance by counsel. Cross, 893 F.2d at 1290. To establish ineffective assistance of counsel, a petitioner "must show that his attorney's performance was deficient and that the deficiency was prejudicial." Id. However, "[c]onclusory allegations of ineffective assistance are insufficient" Wilson v. U.S., 962 F.2d 996, 998 (11th Cir. 1992) (quoting U.S. v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991)). Furthermore, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994).

> Murray [v. Carrier, 477 U.S. 478, 488 (1986)] teaches that a prisoner collaterally attacking his conviction can establish cause for a procedural default if he can show that "some objective factor external to the defense impeded counsel's efforts to comply with the ... procedural rule," or that his attorney's performance

>failed to meet the Strickland standard for effective assistance of counsel. Id. at 488, 106 S.Ct. at 2645. Choosing the second option, [defendant] brought an independent Sixth Amendment claim of ineffective assistance of counsel. Because [defendant] did not pursue the first option by showing some external cause for his procedural default, the district court should have denied the first [court error] claim and focused its attention solely on the second [Sixth Amendment] claim.

Reece v. U.S., 119 F.3d 1462, 1465 (11th Cir. 1997).

A petitioner can establish cause for a procedural default if he can show that "some objective factor external to the defense impeded counsel's efforts to comply with the ... procedural rule," or that he received ineffective assistance of counsel with regard to that claim. Murray v. Carrier, 477 U.S. 478, 488 (1986). An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984).

>When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioners' to bear, is and is supposed to be a heavy one. And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately. Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted).

Analysis

Appeal Waiver

Defendant asserts that the appeal waiver which he signed as part of the plea agreement was nonetheless not knowingly and voluntarily made.

> The validity of a sentence-appeal waiver is a question of law that we review de novo. United States v. Copeland, 381 F.3d 1101, 1104 (11th Cir. 2004). We have consistently held that a sentence-appeal waiver is valid if a defendant enters into it knowingly and voluntarily. United States v. Bascomb, 451 F.3d 1292, 1294 (11th Cir. 2006) (citing cases). In order to establish that the waiver was knowing and voluntary, the government must demonstrate that either " '(1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver.' " United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir.) (citation omitted), cert. denied, 544 U.S. 1041, 125 S.Ct. 2279, 161 L.Ed.2d 1074 (2005).

U.S. v. Jones, 200 Fed.Appx. 915, 921 (11th Cir. 2006).

Defendant claims that he did not understand the appeal waiver provision and blames his attorney for his alleged lack of comprehension. However, his current claims contradict his prior sworn testimony during the plea colloquy. The record clearly establishes that the court specifically questioned him about the waiver; that is sufficient under binding circuit precedent. In response to questions from the court, defendant affirmed that he had had an opportunity to discuss the plea agreement with his attorney prior to the hearing, that he understood its terms, that he understood that his plea agreement contained an appeal waiver. With regard to the waiver, the court asked defendant if he understood that he had waived all rights to appeal except that he had

> reserved the right to contest on appeal or in a post-conviction proceeding only if I impose punishment in excess of the statutory maximum, if I impose punishment that constitutes an upward departure from the guideline range, or if you have a claim of ineffective assistance of counsel. Do you understand that you have waived all other rights to appeal except those three that we've just talked about in your plea agreement?

Doc. 81 at 11. Defendant responded affirmatively.

Based on the full colloquy, the court determined that the defendant's plea was knowing and voluntary. That determination necessarily included defendant's execution of the appeal

waiver within the written plea agreement.  In this Circuit, courts

> apply a 'strong presumption' that statements made by a defendant during his plea colloquy are true, United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994); therefore, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).

U.S. v. Cardenas, 2007 WL 2119918 at *2 (11th Cir. 2007).  Defendant has not alleged facts sufficient to overcome this strong presumption.

Defendant now claims that he was confused by the format of the joint plea hearing with his co-defendant, that his attorney had not met with him to prepare him for the plea until shortly before the hearing, and that his attorney had not realized, at the time he recommended taking the plea, that the evidence against defendant consisted principally of the testimony of two cooperating witnesses.  Defendant offers no indication how the format of the plea colloquy confused him, and does not tie it in any way to his understanding of the appeal waiver provision; if defendant's counsel had not made its terms clear to defendant prior to the hearing, the court's explanation certainly did.  Defendant had more than two years of college education; he has shown no particular difficulty in reading, or in comprehending simple statements.  The court told defendant that he had waived all right to appeal or collaterally attack his sentence, and then described three simple exceptions.  If defendant somehow had misunderstood the court's description of the exceptions, as well as the straight-forward language describing it in the plea agreement, he would have been left with at least an understanding of the general rule–that he had waived all rights to appeal.

Similarly, his attorney's failure to meet with him prior to the plea hearing does not seem to involve his understanding of the written plea agreement which included the appeal waiver.

Regardless, to make a knowing and voluntary waiver of a right, a defendant need not understand every nuance and potential permutation. Having told the court under oath that he had the opportunity to discuss the plea agreement with his attorney, and that he understood the appeal waiver, something considerably more compelling is required than generalized allegations of confusion or lack of sufficient attorney guidance on some unidentified aspect of his plea.

Further, his complaints that he did not know that the government's proof consisted solely of testimony by the two witnesses, and that he would have gone to trial if he had known that fact, are irrelevant to his claimed misunderstanding of the appeal waiver. In addition, even were the court willing to subject this attorney-drafted motion to the liberal construction allowed to pro se litigants – a step the court declines to take – and were the court further to find that defendant had thus also raised a claim that his whole plea was involuntary because he did not know of the alleged paucity of proof, defendant would have failed to have adequately supported his motion. The defendant's factual premise is incorrect; the testimony of his prior customers was only a part of the case against him. According to the factual resume, defendant was found in possession of a significant amount of pure methamphetamine in small bags as if for distribution, carrying equipment into a functional meth lab set up in a shed owned by defendant's parents. The lab contained approximately five ounces of drying methamphetamine and a pseudoephedrine pill soak. Additionally, the authorities found more methamphetamine and digital scales in defendant's car, and additional components and equipment to manufacture and market methamphetamine in his possession. Even without the testimony of two people to whom defendant had previously sold methamphetamine, the physical evidence was strong. Their testimony was clearly not the only evidence against defendant.

Defendant's argument that his execution of the appeal waiver was not knowingly or intelligently given is without merit and is hereby **DENIED**.

Remaining substantive claims

Having again found defendant's appeal waiver to have been knowingly and voluntarily made, the court finds defendant's remaining substantive claims to have been waived. In its response to the petition, the government identifies the issues defendant raised in his direct appeal: (1) whether his sentence was unconstitutional in light of the recent decisions in Booker and Blakely[3]; (2) whether this court treated the guidelines as mandatory; (3) whether he was entitled to an acceptance of responsibility reduction; and (4) whether the type of methamphetamine involved in the case should have been proven beyond a reasonable doubt. The Court of Appeals held that these issues were within the scope of the waiver provision and were not within any of the exceptions provided in the plea agreement. That holding is binding on this court and precludes defendant from raising those issues on collateral attack under the collateral attack provision of the appeal waiver. Further, to the extent, if any, that defendant's remaining substantive claims may be deemed not to have been raised and dismissed on direct appeal, they are clearly barred by the waiver provision itself. Accordingly, the court will not consider defendant's claims, numbered three, four, five and six in the instant motion. Relief on those claims is **DENIED**.

Ineffective Assistance of Counsel

Defendant also claims that he received constitutionally inadequate representation from

---

[3] U.S. v. Booker, 543 U.S. 220 (2005) and Blakely v. Washington, 542 U.S. 296 (2004).

his attorney.[4]  He first asserts that counsel advised him to accept the plea before seeing discovery.  Despite his claim that he would not have pled guilty had he known that the government's evidence consisted only of testimony from two people to whom defendant had previously sold methamphetamine, defendant has failed to demonstrate either prejudice or deficient performance.  As discussed above, defendant's factual foundation is inaccurate.  The physical evidence is significant and appears to have been sufficient to support a conviction even if the former customers' testimony had been subjected to cross-examination and completely discredited.  Regardless, the existence of that physical evidence utterly contradicts the factual assumption at the core of defendant's argument both as to the performance of his attorney and as to defendant's willingness to risk trial on all counts.

Defendant next claims that his attorney advised him and his family that he would receive approximately seven years imprisonment.  Again, defendant can not demonstrate prejudice.  Even if defendant were able to prove that his attorney made a promise rather than merely estimating the time to be served under a guilty plea, the court clearly informed defendant that any such estimates were unreliable, that a final calculation of the guideline range could not be made until after the presentence report was completed and the parties had an opportunity to object, and that the court was not bound to sentence defendant within the guideline range but could depart upward or downward, and that the guidelines are advisory and do not control the sentence the court imposed.  Defendant stated that he understood each of those matters.  Doc. 81 at 9-10.  Thus, regardless whether defendant's attorney made an estimate which later turned out

---

[4] The government has only addressed defendant's claim of ineffective counsel in connection with the appeal waiver provision of the guilty plea.  The court nonetheless finds defendant's other grounds for his claim of ineffective assistance to be without merit.

to be lower than the sentence imposed, and assuming that such an estimate could be deemed to have constituted deficient performance, defendant was nonetheless fully informed prior to entering his plea that he faced the possibility of a higher sentence, bounded only by the range set by the relevant statute.

      Defendant next claims that his attorney was ineffective in that he inaccurately assured defendant prior to the sentencing that he was dealing with the drug quantities stated in the PSI and that, at sentencing, counsel not only did not successfully oppose the government's drug quantity evidence but withdrew his written objections to that evidence. The plea agreement clearly stated that the government and defendant had no agreement as to amount and that the government was free to represent its position at sentencing, that the government could "provide all relevant sentencing information" for inclusion in the PSI and to "allocute fully at the time of sentencing."[5] In light of these provisions, reasonably competent counsel could readily have determined that his prior objections were meritless, and thus decided to dismiss them. Further, defendant can not demonstrate prejudice. He had pled guilty prior to the issuance of the PSI and thus can not assert that he would not have pled guilty if his attorney had not misled him about the likelihood of success in avoiding the increased sentence in the event the court accepted that evidence. Circuit precedent clearly establishes that the court may consider evidence at sentencing on the quantity of drugs. See e.g. U.S. v. Zlatogur, 271 F.3d 1025, 1031 (11th Cir. 2001) (upholding use of hearsay evidence of drug quantity at sentencing). Thus, not only was it appropriate to withdraw the objections to that evidence, defendant can not demonstrate that he would have prevailed had his attorney pursued that objection.

---

[5] Doc. 43, Plea Agreement at 4 and attached Factual Resume at 2-3.

Defendant mentions, in connection with the claim concerning objection to the drug amounts, that counsel also failed to object to the PSI's calculations of the guideline range. However, defendant does not identify what error the PSI purportedly contained. Defendant's allegations are insufficient to establish that his attorney was ineffective for failing to object for no apparent purpose.

Defendant finally contends that his attorney was ineffective because he failed to meet with defendant concerning the plea until shortly before the hearing. As discussed above, defendant has shown no prejudice from this alleged oversight. Defendant does not claim that his attorney did not discuss the plea with him when it was proposed and before accepting it on his client's behalf. He does not allege that he did not have an opportunity to read the plea agreement or discuss it with his attorney: any such claim would have been belied by his testimony at the plea hearing. He does not identify what additional information he should have received prior to the hearing nor any particular prejudice from the alleged failure to meet for a longer period of time. To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. U.S. v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). Defendant has failed even to allege, let alone to prove, that his attorney's failure rendered his plea involuntary.

For the preceding reasons, defendant's claim that his attorney was ineffective is **DENIED** on all grounds raised by defendant.

## Conclusion

The court finds that defendant's plea, which included his limited waiver of the right to

appeal and collaterally attack his sentence, was knowingly and voluntarily entered, and rejects his claim concerning his plea agreement to the contrary.  As such, that waiver precludes defendant from raising any of the substantive challenges to his sentence contained in claims 3 through 6 in his § 2255 petition.  Nor does the court find any merit to defendant's claim that his attorney was constitutionally ineffective.  Accordingly, it is hereby **ORDERED** that defendant's Motion to Vacate, Set Aside or Correct Sentence is **DENIED**.

      **DONE** and **ORDERED** this the 22nd day of August, 2007.

                                       /s/ Callie V. S. Granade
                                       CHIEF UNITED STATES DISTRICT JUDGE